KUHN, J.,
dissenting in part.
hi disagree with the majority’s affir-mance of the trial court’s ruling on the exception of prescription. As the majority correctly notes, in reviewing a peremptory exception raising the objection of prescription, this court is required to strictly construe statutes against prescription and find in favor of maintaining a claim. See Onstott v. Certified Capital Corp., 2005-2548 (La.App. 1st Cir.11/3/06), 950 So.2d 744, 747. I believe the trial court, and now this court on appeal, has erred in its interpretation of the petition and therefore turned a blind eye to the requirement that we strictly construe prescription statutes.
Careful observation of the map attached to the second amending petition shows the location of each of the leased properties. As noted by the majority, four of the leases are adjoining property on the banks of the Intracoastal Waterway. The specific property descriptions of these four leases describe their respective locations by reference to the Intracoastal Waterway. All the property subject to the six leases is in close proximity. The property of abutting Leases A and B is southwest of the adjoining Intracoastal Waterway Leases and is separated from the remaining four leases by a strip that is approximately 312 feet at its narrowest point and 775 feet at its widest.
12Leases A and B (and one of the Intra-coastal Waterway Leases) are dated May 24, 1990. The remaining Intracoastal Waterway Leases are dated March 11, 1977, June 29, 1977, and January 11, 1978. Thus, Leases A and B do not conform to the allegations of the Naquins’ petition indicating that those were leases included within the description of their ownership, *883 i.e., “certain real property on the banks of the Intracoastal Waterway.” Additionally, the majority has failed to include in its analysis the allegations of paragraph VII, which state that “Bollinger has continuously operated the premises as a lessee in possession and has operated the property as a shipyard for in excess of twenty years.” Leases A and B do not conform to that description set forth in paragraph VII. Bollinger did not file an exception of vagueness to clarify these references to the description of the property. And the Naquins did nothing to clarify the inconsistencies in the allegations of their original petition until April 8, 2010.
A review of the record establishes that at the earliest, on July 21, 2005, when Bollinger provided the environmental reports, the Naquins had actual knowledge of the damages on the leased property. Thus, prescription on the Naquins’ tort claims commenced on that date and accrued on July 21, 2006. On that date, the allegations of fact set forth in the original lawsuit remained as the basis for the lawsuit.
The purpose of a prescription statute is to afford a defendant economic and psychological security if a cause of action is not pleaded timely and to protect the defendant from stale claims and the loss of relevant proof. A prescription statute is designed to protect the defendant against lack of notification of a formal claim within the prescriptive period, not against pleading mistakes that the defendant’s opponent makes in filing the formal claim within the period. Terrel v. Perkins, 96-2629 (La.App. 1st Cir.11/7/97), 704 So.2d 35, 38.
|sBollinger, who was in actual possession of the leases, knew that, unlike Lease B, which was described with specificity, the other leases — except Lease A — were on the banks of the Intracoastal Waterway. And Bollinger knew that the property of all of the leases was used in its operations as a shipyard. Thus, Bollinger was aware that the allegations of paragraph IV and V were either inconsistent or referencing more than simply Lease B. Reading paragraphs IV and V in light of the facts to which Bollinger was aware, and mindful of the close geographic proximity of the leased parcels, both to one another and to the Intracoastal Waterway, as well as the fact that all of the leased property was used to conduct Bollinger’s shipyard operations, the Naquins’ petition put Bollinger on notice that all the leases were “the property involved in this matter.” It is evident that the Naquins filed their petition in an effort to make a formal claim within the delictual prescriptive period, and that the ambiguities and inconsistencies in their description of the property were merely mistakes in pleading. Bol-linger’s opportunity to seek clarity in the allegations was waived when it filed its answer, over a year later, without raising a dilatory objection of vagueness. See La. C.C.P. arts. 926 and 928; see also Vanderbrook v. Jean, 2006-1975 (La.App. 1st Cir.2/14/07), 959 So.2d 965, 968 (the purpose of the objection of vagueness is to place the defendant on notice of the nature of the facts sought to be proved so as to enable him to identify the cause of action; it must be pleaded prior to or in the answer, or it is waived).
Thus, because the Naquins timely interrupted prescription with the filing of their petition for damages on April 8, 2005, the subsequent amendments filed on April 8, 2010 and September 10, 2010, which merely clarified the original allegations asserted in the original pleading, arose out of the same transaction and occurrence and, therefore, related back to the April 8, 2005 petition. See La. C.C.P. art. 1153 (when the action or defense asserted in the amended petition or answer arises out of |4the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment re *884 lates back to the date of filing the original pleading); see also Scott v. Haley, 632 So.2d 793, 794-95 (La.App. 1st Cir.1993) (an amendment of the petition is permitted despite technical prescriptive bars where the original pleading gives fair notice of the general fact situation out of which the amended claim arises; and where there is some factual connexity between the original and amended assertions, together with some identity of interest between the parties, amendment should be allowed).
For these reasons, although I believe that the majority correctly affirmed the trial court’s conclusion that the tort claim related to the Lease B property was timely asserted, I believe it erred in affirming the trial court’s action of sustaining the exception of prescription and dismissing the tort claims related to the property of the remaining leases. I would reverse that portion of the judgment that sustains the exception of prescription and dismisses all of the Naquins’ other tort claims.
I concur with the majority’s disposition converting the appeal of the trial court’s action of overruling of the exception of prematurity (insofar as the Naquins’ contractual claims) and would, likewise, deny the writ.